An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1108

Filed 2 July 2025

Wake County, No. 19JA000156-910

In the Matter of:

H.M.D.

Appeal by respondent-mother from order entered 2 October 2024 by Judge Ashleigh S. Parker in Wake County District Court. Heard in the Court of Appeals 11 June 2025.

> *Wake County Attorney's Office, by Mary Boyce Wells, for petitioner-appellee Wake County Health and Human Services.*

> *Administrative Office of the Courts, by GAL Staff Attorney Brittany T. McKinney, for appellee guardian ad litem.*

> *Hooks Law, P.C., by Laura G. Hooks, for respondent-appellant mother.*

ZACHARY, Judge.

Respondent-Mother appeals from the trial court's order terminating her parental rights to her daughter, "Haylee."[1] After careful review, we affirm.

---

[1] To protect the identity of the juvenile, we adopt the pseudonym to which the parties stipulated. *See* N.C.R. App. P. 42(b). We further note that Respondent-Father has not appealed from the trial court's order, which terminated his parental rights to Haylee, as well as Respondent-Mother's. Consequently, he is not a party to this appeal.

## I.    Background

Haylee was born to Respondent-parents in 2019. Haylee is Respondent-Mother's fourth child. Respondent-Mother's three other minor children have all been removed from her custody; two have been adopted and the third is in the custody of relatives.

When Haylee was four months old, she was found to have 11 fractures. Respondent-Father entered into a plea agreement related to those injuries and received an active sentence of 32–48 months' incarceration. During that period, Haylee was adjudicated as an abused and neglected juvenile and was placed in the custody of the Wake County Department of Health and Human Services ("WCHHS") for over a year before she returned to Respondent-Mother's sole custody.

In November 2022, WCHHS received a report that Respondent-Mother had burned Haylee on her forehead with a cigarette. A WCHHS social worker made multiple attempts to investigate, but Respondent-Mother was evasive. During one investigative visit to the home, Respondent-Mother fled with an unknown man, leaving Haylee under a roommate's care. The social worker learned during this visit that Respondent-Mother possessed and was using illicit prescription opiates. WCHHS determined that Respondent-Mother's roommates were not appropriate alternative childcare options and assumed emergency custody of Haylee.

On 21 November 2022, WCHHS filed a juvenile petition alleging that Haylee was a neglected and dependent juvenile and obtained nonsecure custody of Haylee.

WCHHS placed Haylee in foster care and Respondent-Mother engaged in supervised visitation with her.

On 17 January 2023, the trial court entered an order adjudicating Haylee as a neglected and dependent juvenile. The court ordered Respondent-Mother to enter into and comply with a case plan, which included adhering to a visitation agreement; obtaining and maintaining stable and suitable housing and income sufficient for herself and Haylee; and keeping in regular contact with WCHHS. The case plan also required Respondent-Mother to obtain a substance-abuse assessment, complete a parenting-education program, and secure an updated psychological assessment.

This matter came on for a permanency planning hearing on 27 March 2023. The court found that Respondent-Mother had not kept in consistent contact with WCHHS or the guardian ad litem and that she struggled to maintain housing and a legal income. The court further found "no evidence that she [wa]s receiving any meaningful therapy, treatment or support for her substance abuse." Although the trial court found that neither parent was "making adequate progress in a reasonable period of time and their behaviors [we]re contrary to [Haylee]'s health and safety," the court nevertheless determined that reunification with Haylee was "possible in the next six months if [Respondent-parents] beg[a]n treatment and services." Accordingly, the court set reunification as the primary permanent plan, with adoption as the secondary plan.

On 23 June 2023, Respondent-Mother was arrested on various drug charges.

When she was released from incarceration in August, Respondent-Mother resumed communication with WCHHS and supervised visitation with Haylee.

After a permanency planning hearing on 18 September 2023, the court entered an order on 15 November 2023 in which it again determined that neither Respondent-parent was "making adequate progress in a reasonable period of time" or "actively cooperating with their case plans" and that "their behaviors [we]re contrary to [Haylee]'s health and safety." Even so, the court maintained reunification as the primary permanent plan.

However, by the next permanency planning hearing on 11 December 2023, Respondent-Mother had relapsed; she had resumed using opioids and was without housing or employment. In an order entered on 4 January 2024, the trial court determined that Respondent-parents' reunification with Haylee was "no longer likely in the next six months." The court set adoption as the primary permanent plan, with reunification as the secondary plan.

On 6 May 2024, WCHHS filed a motion to terminate Respondent-parents' parental rights to Haylee. WCHHS alleged the existence of the following grounds for termination: neglect; willfully leaving Haylee in foster care for more than 12 months without making reasonable progress; willful failure to pay a reasonable portion of the cost of Haylee's foster care; and willful abandonment. *See* N.C. Gen. Stat. § 7B-1111(a)(1)–(3), (7) (2023).

WCHHS's motion to terminate parental rights came on for hearing on 27

August 2024. On 2 October 2024, the trial court entered an order terminating Respondent-parents' parental rights to Haylee. The court concluded that three of the alleged grounds for termination existed: neglect, willful abandonment, and willfully leaving Haylee in foster care for more than 12 months without making reasonable progress toward "correcting the conditions which led to the removal of the child." The court further concluded that it was in Haylee's best interest for Respondent-parents' parental rights to be terminated.

Respondent-Mother timely filed notice of appeal.

## II. Discussion

On appeal, Respondent-Mother challenges each of the three grounds for termination and the conclusion that termination of her parental rights was in Haylee's best interest. Dispositive among these, she argues that the trial court erred by finding that she willfully left Haylee in foster care for more than 12 months without making reasonable progress because "[t]he court failed to make sufficient findings to conclude willfulness" as this ground requires. We disagree.

### A. Standard of Review

Our appellate courts "review a trial court's adjudication that grounds exist to terminate parental rights to determine whether the findings are supported by clear, cogent[,] and convincing evidence and the findings support the conclusions of law." *In re A.N.H.*, 381 N.C. 30, 34, 871 S.E.2d 792, 799 (2022) (cleaned up). Our standard of review in this context has been well established by our Supreme Court:

A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding. Findings of fact not challenged by [the] respondent are deemed supported by competent evidence and are binding on appeal. Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate [the] respondent's parental rights. The trial court's conclusions of law are reviewable de novo on appeal.

*Id.* (cleaned up).

Similarly, "[t]he trial court's dispositional findings are binding on appeal if supported by any competent evidence." *In re J.S.*, 374 N.C. 811, 822, 845 S.E.2d 66, 75 (2020). "The trial court's determination of a child's best interests . . . is reviewed only for abuse of discretion. An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* (cleaned up).

**B. Analysis**

The dispositive ground for termination in this case is set forth in N.C. Gen. Stat. § 7B-1111(a)(2), which provides that a trial court may terminate parental rights upon a finding that:

> (2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.

N.C. Gen. Stat. § 7B-1111(a)(2).

Our Supreme Court has explained that "this ground requires the trial court to perform a two-step analysis." *In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792, 797 (2020). The trial court "must determine by clear, cogent, and convincing evidence" the following: "whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child." *Id.*

"A [parent]'s prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress sufficient to warrant termination of parental rights under [§] 7B-1111(a)(2)." *J.S.*, 374 N.C. at 815, 845 S.E.2d at 71 (cleaned up). "Leaving a child in foster care or placement outside the home is willful when a parent has the ability to show reasonable progress, but is unwilling to make the effort." *In re A.J.P.*, 375 N.C. 516, 525, 849 S.E.2d 839, 848 (2020) (cleaned up).

"Parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to . . . § 7B-1111(a)(2)." *J.S.*, 374 N.C. at 815, 845 S.E.2d at 71 (cleaned up).

> However, in order for a [parent]'s noncompliance with her case plan to support the termination of her parental rights, there must be a nexus between the components of the court-approved case plan with which the [parent] failed to comply and the conditions which led to the child's removal

from the parental home.

*Id.* at 815–16, 845 S.E.2d at 71 (cleaned up).

Regarding the "willfulness" element of N.C. Gen. Stat. § 7B-1111(a)(2), Respondent-Mother first contends that the trial court's findings of fact #39 and #40(b) "are legal determinations" and thus should be treated as conclusions of law rather than findings of fact. Yet, it is well settled that "willfulness" is a question of fact in the context of N.C. Gen. Stat. § 7B-1111(a)(2). *See, e.g., id.* at 818, 845 S.E.2d at 73 ("The determination that [a parent] acted 'willfully' [in leaving a child in foster care for more than 12 months without making reasonable progress] is a finding of fact rather than a conclusion of law.").

Rather than conclusions of law, these challenged findings are more accurately described as ultimate findings of fact. "Ultimate facts are the final facts required to establish [a] cause of action or [a] defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts." *In re G.C.*, 384 N.C. 62, 66 n.3, 884 S.E.2d 658, 661 n.3 (2023) (citation omitted). As our Supreme Court recently reiterated, "an ultimate finding is a finding supported by other evidentiary facts reached by natural reasoning." *Id.* Thus, our appellate courts review termination orders "to determine whether the trial court made sufficient factual findings to support its ultimate findings of fact and conclusions of law, regardless of how they are classified in the order." *Z.A.M.*, 374 N.C. at 97, 839 S.E.2d at 798.

On appeal, Respondent-Mother does not challenge any of the evidentiary

findings that support the court's ultimate finding of willfulness, thus rendering them binding on appeal. *See A.N.H.,* 381 N.C. at 34, 871 S.E.2d at 799 ("Findings of fact not challenged by [the] respondent are deemed supported by competent evidence and are binding on appeal." (citation omitted)). These unchallenged evidentiary findings amply support the trial court's ultimate finding of fact that Respondent-Mother "willfully left the child in foster care for more than twelve (12) months without showing to the satisfaction of the court that reasonable progress under the circumstances ha[d] been made in correcting the conditions which led to the removal of the child."

To this end, the court found that Respondent-Mother had failed to comply with multiple drug screens; had "not completed a psychological evaluation"; had "only sporadically maintained contact with [her] assigned social worker"; had only visited Haylee sporadically prior to October 2023, even though she was allowed "the opportunity to visit with [Haylee] on a weekly basis"; had not visited Haylee since October 2023; had "not established a stable income" and was not seeking employment (despite WCHHS's efforts to assist with her job search); had "not established stable housing" after her November 2023 eviction, notwithstanding WCHHS's efforts to help her find housing; and had not complied with the substance-abuse components of her case plan.

Instead of challenging any of these evidentiary findings of fact, Respondent-Mother treats the ultimate findings as conclusions of law and, by excluding them from

her analysis of the court's findings, claims that the court "failed to make findings as to [her] willfulness; therefore, it erred." *See In re M.B.*, 382 N.C. 82, 88–89, 876 S.E.2d 260, 266 (2022) ("[T]he trial court was required to make a finding of willfulness to support its termination of [the] respondent's parental rights under [N.C. Gen. Stat.] § 7B-1111(a)(2) in this case."). Contrary to Respondent-Mother's assertions, however, our Supreme Court's holding in *M.B.* is not fatal to this case because here, the trial court made an ultimate finding of Respondent-Mother's willfulness.

Respondent-Mother therefore cannot prevail in her argument that the trial court erred by allegedly failing to make a sufficient finding of her willfulness pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). "Because we hold that the trial court properly adjudicated a ground for terminating [Respondent-Mother]'s parental rights under [N.C. Gen. Stat.] § 7B-1111(a)(2), we need not review [her] arguments regarding the [two] additional grounds for termination found by the trial court." *J.S.*, 374 N.C. at 821, 845 S.E.2d at 75.

Finally, Respondent-Mother argues that "[t]he trial court abused its discretion by terminating [her] parental rights" because it was "not in Haylee's best interests to permanently and legally sever her relationship to her mother." We disagree.

Respondent-Mother contends that three of the dispositional findings "are not wholly supported" by the evidence. This argument is insufficient, as our well-settled standard of review requires us to determine whether the dispositional findings are "supported by *any competent evidence*." *Id.* at 822, 845 S.E.2d at 75 (emphasis added).

As both WCHHS and the guardian ad litem note in their appellate briefs, there is competent evidence to support the challenged dispositional findings.

After careful review, we conclude that the trial court's dispositional decision "rest[s] upon a proper consideration of the appropriate criteria, a reasonable view of the record evidence, and a reasoned analysis of [Haylee]'s best interests." *In re I.N.C.*, 374 N.C. 542, 552, 843 S.E.2d 214, 221 (2020). "As a result, since the trial court did not abuse its discretion in determining that the best interests of [Haylee] would be served by terminating [Respondent-Mother's] parental rights, we affirm the trial court's termination order." *Id.*

## III.   Conclusion

The trial court's order is affirmed.

AFFIRMED.

Judges TYSON and COLLINS concur.

Report per Rule 30(e).